UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

G&G CLOSED CIRCUIT EVENTS, LLC,          :
                                         :
                    Plaintiff,           :
                                         :
        -against-                        :
                                         :          REPORT &
                                         :          RECOMMENDATION
CLEOTILDE VASQUEZ, *also known as*       :          20-CV-2030 (RJD) (SMG)
CLEOTILDE DRAGANIDES, *doing business as*:
LA PARRANDA, and LA PARRANDA             :
MEXICANA BAR & RESTAURANTE CO., INC.,    :
*doing business as* LA PARRANDA,         :
                                         :
                    Defendants.          :
                                         :

------------------------------------------------------------- x

GOLD, STEVEN M., U.S. Magistrate Judge:

### INTRODUCTION

Plaintiff G&G Closed Circuit Events, LLC, brings this action against Cleotilde Vasquez,

also known as Cleotilde Draganides, and La Parranda Mexican Bar & Restaurante Co, Inc.,

doing business as and referred to herein as "La Parranda," alleging that the defendants, in

violation of the Federal Communications Act of 1934 ("FCA"), 47 U.S.C. §§ 553 and 605,

unlawfully intercepted and displayed a boxing match held on May 7, 2016, between Saul

Alvarez and Julio Cesar Chavez, Jr., (the "Program").  Compl. ¶¶ 1, 14, 19, 26, 28, Dkt. 1.  Upon

plaintiff's application and in light of defendants' failure to appear in or otherwise defend this

action, the Clerk of the Court entered defendants' default on July 29, 2020.  Dkt. 8.  Plaintiff

now moves for default judgment and seeks statutory damages, attorney's fees and costs, and pre-

and post- judgment interest.  Mot. for Default J., Dkt. 10; Pl.'s Mem. at 5 n. 2, Dkt. 10-2.  United

States District Judge Raymond J. Dearie has referred plaintiff's motion to me for report and

recommendation.  Order dated Sept. 8, 2020.

## DISCUSSION

### I.      Liability

"When a party against whom a judgment for affirmative relief is sought has failed to

plead or otherwise defend," plaintiff may apply to the court for a default judgment. Fed. R. Civ.

P. 55(a).  Once a default is entered, moreover, "a court is required to accept all…factual

allegations as true and draw all reasonable inferences in [plaintiff's] favor." *Finkel v.*

*Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  "Nevertheless, it remains for the court to consider

whether the unchallenged facts constitute a legitimate cause of action, since a party in default

does not admit conclusions of law." *Labarbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270

(E.D.N.Y. 2010) (internal quotation marks and citation omitted); *see TAGC Mgmt., LLC v.*

*Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) (same).

### A.  Federal Communications Act, Sections 605(a) and 553(a)

Plaintiff has alleged violations of the FCA under Section 605(a) and 553(a).  Compl. ¶¶

1, 29–45.  Section 605 "generally prohibits the unauthorized use or publication of wire or radio

communications," *Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1007 (2d Cir. 1993), while

Section 553(a) "prohibits theft of services offered over a cable system," *J & J Sports Prods., Inc.*

*v. Ferreiras*, 2018 WL 6168557, at *9 (E.D.N.Y. Nov. 20, 2018).  "[T]he term 'radio

communication,' as used in [Section 605(a)], has long been understood to include satellite

transmissions." *J & J Sport Prods., Inc. v. Nacipucha*, 2018 WL 2709222, at *3 (E.D.N.Y. May

18, 2018), *report and recommendation adopted*, 2018 WL 2709200 (E.D.N.Y. June 5, 2018); *see*

*also Garden City Boxing Club, Inc. v. Focused Enters., Ltd.*, 2007 WL 1655647, at *2 (E.D.N.Y.

June 6, 2007) ("Because [plaintiff] alleges that the Event was conveyed via satellite

transmission, it has properly pleaded a claim under § 605(a).").  Thus, to make out a claim under

Section 605(a), plaintiff must have transmitted the Program by satellite and defendants must have intercepted it without authorization.

Here, plaintiff alleges that defendants intercepted its signal, which "originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal." Compl. ¶ 24. Defendants then displayed the Program on five screens in a commercial setting without plaintiff's permission. *Id.* ¶¶ 26–28; Pl.'s Aff. ¶ 7, Dkt. 10-1 at ECF pages 1–6. Though plaintiff is apparently unsure of the exact method defendants used to intercept the broadcast, *see* Pl.'s Aff. ¶¶ 9–10, "all that needs to be alleged (to state a § 605 claim) is that the communication *originated* via satellite." *Ferreiras*, 2018 WL 6168557, at *7; *see also Joe Hand Promotions, Inc. v. Bernal*, 2019 WL 885930, at *3 (E.D.N.Y., Feb, 22, 2019) ("[A]ny one of the various technologies by which [plaintiff's] satellite broadcast could have been intercepted is sufficient to establish liability.").[1] Plaintiff has thus stated a claim under Section 605(a).

Conduct that violates Section 605(a) may also violate Section 553(a). *Int'l Cablevision v. Sykes*, 75 F.3d 123, 132–33 (2d. Cir. 1996). When it does, liability need be considered only under Section 605(a), which provides for a greater recovery. *See Bernal*, 2019 WL 885930, at *2; *J & J Sports Prods., Inc. v. El Sonador Café Rest., Inc.*, 2017 WL 6397731, at *2 (E.D.N.Y. Dec. 14, 2017); *Kingvision Pay-Per-View v. Castillo Rest. Corp.*, 2007 WL 841804, at *3 (E.D.N.Y. Jan. 16, 2007).

---

[1] In contrast, a handful of *J & J Sports Production* cases have failed to state a claim under Section 605(a) because they do not specify the method through which the *plaintiff* transmitted the material as opposed to identifying how the defendant intercepted the material. *See J & J Sports Prods., Inc. v. Ferreiras*, 2018 WL 6168557, at *6 (E.D.N.Y. Nov. 20, 2018) (refusing to grant liability under 605(a) where the "Complaint never allege[d] that the Event was transmitted over satellite or that it was a satellite communication").

B. *Liability of Individual Defendant*

Plaintiff seeks to hold defendant Cleotilde Vasquez individually liable for the displaying

the Program at La Parranda.  *See* Compl. ¶¶ 9–17; Pl.'s Mem. at 1.  Establishing individual

liability under Section 605(a) requires showing either "contributory infringement," which arises

when the individual "authorize[d] the violations," or "vicarious liability," which arises when the

individual "had a right and ability to supervise the infringing activities and had an obvious and

direct financial interest in the exploitation of [the] copyrighted materials."  *J & J Sports Prods.,*

*Inc. v. Tellez*, 2011 WL 6371521, at *3 (E.D.N.Y. Dec. 20, 2011) (citing *J & J Sports Prods.,*

*Inc. v. LDG Williams, LLC*, 2011 WL 5402031, at *5–*6 (E.D.N.Y. Nov. 7, 2011)).

Courts in this district considering motions for default judgments have required more

particularized allegations than those based solely on an individual defendant's position as

"officer, director, shareholder and/or principal."  *See, e.g., J & J Sports Prods., Inc. v. Hot Shotz*

*Sports Bar Inc.*, 2018 WL 5020175, at *5–*6 (E.D.N.Y. July 13, 2018), *report and*

*recommendation adopted by*, 2018 WL 4627666 (Sept. 27, 2018).  Specifically, courts consider

whether a plaintiff has alleged that the defendant "was present for the violation, that he

authorized or controlled it, or that he reaped commercial profit from it."  *J & J Sports Prods.,*

*Inc., v. 291 Bar & Lounge LLC*, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009) (rejecting individual

liability where those allegations were left out of the complaint); *see also Bernal*, 2019 WL

885930, at *3 (granting individual liability where the individual defendant was "present during

the exhibition, and authorized the exhibition").

Here, plaintiff alleges that Vasquez was not only the owner and principal of La Parranda,

but also that he "specifically directed the employees of La Parranda to unlawfully intercept,

receive and broadcast Plaintiff's *Program*" and had "an obvious and direct financial interest in

the activities of La Parranda." Compl. ¶¶ 9, 14–15.  Plaintiff further alleges that Vasquez is "the

sole individual identified on the On Premises Liquor License [] issued to La Parranda." *Id.* ¶¶

10–13, 15.  Accepting these allegations as true, plaintiff's Complaint supports the inference that

Vasquez had the "right and ability to supervise the infringing proceedings" and an "obvious and

direct financial interest" in any profit made by exhibiting the Program at La Parranda.  *See Joe*

*Hand Promotions, Inc. v. Kings Point Rest., Inc.,* 2017 WL 6611705, at \*7 (E.D.N.Y. Nov. 3,

2017), *report and recommendation adopted*, 2017 WL 6611571 (E.D.N.Y. Dec. 27, 2017).  The

Court therefore recommends that defendant Vasquez be held jointly and severally liable with

defendant La Parranda for the damages recommended below.

## II.   Remedies

### A.  Damages

Unlike those concerning liability, allegations relating to damages are not deemed

admitted upon default.  *See Cement & Concrete Workers Dist. Council Welfare Fund, Pension*

*Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*,

699 F.3d 230, 234 (2d Cir. 2012) (citing *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973

F.2d 155, 158 (2d Cir. 1992)).  Rather, damages must generally be established in an evidentiary

proceeding at which the defendant is afforded the opportunity to contest the amount claimed.

*Greyhound Exhibitgroup*, 973 F.2d at 158.  However, "these steps are not necessary as long as

[the court] ensure[s] that there was a basis for the damages specified in the default judgment."

*Joe Hand Promotions, Inc. v. Levin*, 2019 WL 3050852, at \*3 (S.D.N.Y. July 12, 2019)

(alterations in original) (internal quotation marks and citation omitted).  A court may make this

determination upon a review of detailed affidavits and documentary evidence.  *See Fustok v.*

*Conticommodity Servs., Inc.,* 873 F.2d 38, 40 (2d Cir. 1989).

Section 605 provides that a plaintiff may recover statutory damages "of not less than $1,000 or more than $10,000… for each violation." 47 U.S.C. § 605(e)(3)(C)(i). In addition to statutory damages, a plaintiff may recover enhanced damages in "an amount of not more than $100,000 for each violation" where "the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii); *Bernal*, 2019 WL 885930, at *3. "Courts have interpreted the showing of an event on a single night as one violation for the purposes of statutory and enhanced damages." *Bernal*, 2019 WL 885930, at *3 (quotation marks omitted) (quoting *El Sonador*, 2017 WL 6397731, at *3). Here, plaintiff requests $6,600 in statutory damages and $19,800 in enhanced damages, or three times the requested statutory damages, for a single violation. Pl.'s Mem. at 5.

### 1.   Statutory Damages

To determine statutory damages, courts typically calculate the flat-fee rate and the per-person rate and then award the greater of the two. *Hot Shotz*, 2018 WL 5020175, at *7 (collecting cases). The flat-fee rate is "the amount that the establishment would have paid to license the event and broadcast it legally." *Bernal*, 2019 WL 885930, at *4 (citing *J & J Sports Prods., Inc., v. GPN Bar, Inc.*, 2016 WL 8139019, at *5 (E.D.N.Y. Dec. 15, 2016), *report and recommendation adopted*, 2017 WL 435785 (E.D.N.Y. Feb. 1, 2017)). To calculate the per-person amount, the court "multiplies the number of patrons in the establishment by the fee that an average customer would pay to view the fight at home on a pay-per-view channel." *Bernal*, 2019 WL 885930, at *4.

Here, plaintiff does not include the residential fee in its submissions, preventing the Court from calculating the per-person amount, *see id.*, but has submitted an exhibit showing the rates charged to commercial customers. *See* Pl.'s Ex. 2 ("Rate Card"), Dkt. 10-1 at ECF pages 17–18;

*see also* Pl.'s Aff. ¶ 8.  The rate card indicates that the license to lawfully display the Program to the 75 patrons observed watching the Program at La Parranda would have cost defendants $2,200.  Rate Card; Decl. Ex. 5 ("Investigator Aff."), Dkt. 10-3 at ECF pages 34–37.  Thus, plaintiff's request for $6,600 in statutory damages amounts to three times what defendants would have paid as a licensing fee.  However, there is no authority supporting plaintiff's request to treble the base statutory award; courts in this Circuit typically award a multiple of the base award under Section 605 only when awarding enhanced damages.  *See, e.g., Hot Shotz*, 2018 WL 5020175, at *8–*9.  Plaintiff acknowledges as much in its memorandum of law.  *See* Pl.'s Mem. at 8.  Moreover, the very justifications plaintiff puts forth in support of trebling the statutory damages, including that "[u]nlawful access must cost a violator more than face ticket price," are the same justifications courts use to justify awards of enhanced damages.  *See Kings Point Rest., Inc.*, 2017 WL 6611705, at *6 (noting in determining enhanced damages that awarding statutory damages alone "would understate the seriousness of defendants' conduct, particularly since, as plaintiff contends, plaintiff has suffered intangible losses in the form of 'business investment, business opportunities, reputation, and goodwill.'").  I therefore respectfully recommend awarding plaintiff $2,200 in statutory damages.

### 2.  Enhanced Damages

Plaintiff is also entitled to enhanced damages given defendants' willful violation of the statute.  Willfulness is generally "presumed in cases arising under § 605 where the defendant defaults."  *Bernal*, 2019 WL 885930, at *5; *see also Time Warner Cable of N.Y.C. v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("Signals do not descramble spontaneously nor do television sets connect themselves to cable distribution systems.").  In calculating enhanced damages, "[c]ourts in this Circuit typically award…a multiple of the

statutory damages award." *Hot Shotz*, 2018 WL 5020175, at \*9 (collecting cases).  A court's

decision to award an amount equal to, double, or triple the statutory damages depends on the

presence of factors such as "whether there is evidence of (i) repeated violations; (ii) significant

actual damages suffered by the plaintiff; (iii) substantial unlawful monetary gains by defendant;

(iv) defendant's advertising of the event; and (v) defendant's collection of a cover charge or

premiums for food and drinks."  *Id.*; *see also Traffic Sports USA v. La Camisa Negra Rest. &*

*Bar Corp.*, 2012 WL 3064129, at \*5 (E.D.N.Y. May 23, 2012) (collecting cases), *report and*

*recommendation adopted*, 2012 WL 3065523 (E.D.N.Y. July 27, 2012).

The presence of at least one of these factors may support an award in an amount three to

four times the statutory damages award, particularly when defendants' unlawful activity attracts

a significant number of patrons.  *See Bernal*, 2019 WL 885930, at \*5 (applying a 4.5 multiplier

because defendants were repeat offenders and charged a $20 cover in an establishment with an

estimated capacity of 50 to 100 persons); *J & J Sports Prods., Inc. v. El Sonador Cafe Rest., Inc.*,

2015 WL 1928757, at \*2–\*4 (E.D.N.Y. Apr. 28, 2015) (awarding enhanced damages of

$13,488.75, an amount three times the statutory award, in a case where there were 75 patrons and

defendants charged $5 as a cover); *J & J Sports Prods., Inc. v. AAA Blue Iguana Bar Lounge,*

*Inc.*, 2014 WL 4536741, at \*5–\*6 (E.D.N.Y. Sept. 10, 2014) (awarding enhanced damages of

$6,600, three times the statutory damages recommended, in case where 25 patrons were observed

and "Plaintiff's submissions and defendants' default suffice to support the inference that

defendants displayed the boxing match for commercial gain in order to attract customers to

patronize their establishment"); *Joe Hand Promotions, Inc. v. Algesk Inc.*, 2014 WL 1028947, at

\*5–\*7 (E.D.N.Y. Mar. 14, 2014) (awarding enhanced damages totaling $9,066.75, an amount

three times the statutory award, in case where there were 55 patrons and defendants charged a $10 cover).

Here, the report submitted by plaintiff's investigator indicates that he paid a $10 cover charge upon entering La Parranda, observed defendants selling alcoholic drinks, and counted 75 patrons. Investigator Aff. Defendants' willful violation of Section 605 was thus clearly undertaken for financial gain; defendants would have made $750 in cover charges alone. The fact that the Program was displayed on five televisions, *see id.*, also suggests that defendants intended to attract a significant number of patrons with their unlawful broadcast. Accordingly, I respectfully recommend awarding plaintiff enhanced damages of $8,800, an amount four times the statutory award.

### B. Attorney's Fees and Costs

As the prevailing party, plaintiff is entitled to reasonable attorney's fees and costs under the FCA. 47 U.S.C. § 605(e)(3)(B)(iii). Plaintiff's counsel submits an application for $1,832.50 in attorney's fees and $1,263.52 in costs. *See* Att'y Fees Decl. Ex. 1 ("Billable Hours"), Dkt. 14-1 at ECF pages 4–7.

Well-established Second Circuit doctrine requires that a fee application be supported by "contemporaneous time records" that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983). Failure to provide such records warrants denial of the application for fees. *See, e.g., J & J Sports Prods., Inc. v. James*, 2019 WL 2271843, at *1 (E.D.N.Y. Mar. 5, 2019) ("When an attorney fails to keep such contemporaneous records, a motion for attorneys' fees must ordinarily be denied in its entirety."), *report and recommendation adopted,* 2019 WL 1403112 (E.D.N.Y. Mar. 28, 2019); *Joe Hand Prods., Inc.*

*v. Zafaranloo*, 2014 WL 1330842, at *5 (E.D.N.Y. Apr. 1, 2014).  Here, though plaintiff's

counsel has submitted an exhibit in support of his application which resembles contemporaneous

time records, *see* Billable Hours, he clarifies in his declaration that those records were

"reconstructed by way of a thorough review of the files themselves" as opposed to being

contemporaneously recorded, *see* Decl. of Pl.'s Counsel ("Hunter Decl.") ¶ 6, Dkt. 14-1 at ECF

pages 1–3.  A similar after-the-fact reconstruction is precisely what the Court held deficient in

*Zafaranloo*.  I therefore respectfully recommend that plaintiff's motion for attorney's fees be

denied in its entirety due to counsel's failure to keep contemporaneous records.

Plaintiff additionally requests $1,263.52 in costs to cover investigative expenses of $660,

the filing fee of $400, and service fees of $203.52.  Having reviewed the docket and the invoices

documenting the services costs, *see* Att'y Fees Decl. Ex. 3, Dkt. 14-1 at ECF pages 10–13, I find

plaintiff's request for reimbursement of the $400 filing fee and the $203.52 in service fees

reasonable.

However, I recommend denying plaintiff's request for investigative fees, which are also

documented in an invoice, *see* Att'y Fees Decl. Ex. 2, Dkt. 14-1 at ECF pages 8–9.  "Although

the Court may direct that investigative costs be awarded, it is not obliged to." *J & J Sports

Prods., Inc. v. Rodrigues*, 2007 WL 1726462, at *9 (E.D.N.Y. Apr. 19, 2007).  Like attorney's

fees, parties "requesting investigative costs must supply contemporaneous time records to

substantiate the fee request." *Id.* (quotation marks omitted) (quoting *Int'l Cablevision, Inc. v.

Noel*, 982 F. Supp. 904, 917 (W.D.N.Y. 1997)).  Here, plaintiff submits a bill showing the

investigator's total charge without identifying the investigator's hourly rate or the total time

spent on this assignment.  The fact that the investigator apparently spent only 16 minutes in La

Parranda, *see* Investigator Aff, makes the $660 fee seem particularly unreasonable.  *See J & J*

*Sports Prods., Inc. v. Smith*, 2007 WL 595090, at \*5 (E.D.N.Y. Feb. 22, 2007) ("Plaintiff offers no rationale for an award of $350 for fifteen minutes of investigative work. I therefore recommend that this aspect of plaintiff's claim for fees and costs be rejected."). Accordingly, I recommend denying plaintiff's request for investigative fees.

### C. Interest

Plaintiff seeks prejudgment interest at the federal statutory rate. Pl.'s Mem. at 5 n.2. "Section 605 does not provide a statutory basis for such an award of interest…[but] [t]he district court may nevertheless choose to award pre-judgment interest." *J & J Sports Prods., Inc. v. Mangos Steakhouse & Bakery*, Inc., 2014 WL 2879868, at \*11 (E.D.N.Y. May 7, 2014) (internal citations omitted), *report and recommendation adopted*, 2014 WL 2879890 (E.D.N.Y. June 24, 2014). Courts in this district have declined to award prejudgment interest when a plaintiff receives an enhanced damage award, reasoning that enhanced damages are sufficient compensation. *See, e.g., id.*; *G&G Closed Circuit Events, LLC v. Carlos Laura Corp.*, 2017 WL 933087, at \*4 (E.D.N.Y. Feb. 16, 2017), *report and recommendation adopted*, 2017 WL 933082 (E.D.N.Y. Mar. 8, 2017). Likewise, here, I recommend denying plaintiff's request for prejudgment interest because the enhanced damages recommended above are adequate compensation. Plaintiff may, however, recover post-judgment interest, to be calculated from the date the Clerk of Court enters judgment until the date of payment, pursuant to 28 U.S.C. § 1961.

## CONCLUSION

For all the reasons stated above, I respectfully recommend that defendants Cleotilde

Vasquez and La Parranda be held jointly and severally liable and that plaintiff be awarded

$11,000 in damages and $603.52 in costs.  However, I recommend denying plaintiff's request for

attorney's fees, investigative fees, and prejudgment interest.

Any objections to the recommendations made in this Report must be made within

fourteen days after the filing of this Report and Recommendation and, in any event, on or before

January 11, 2021.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file timely

objections may waive the right to appeal the District Court's order.  *See Small v. Sec'y of Health*

*& Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (discussing waiver under the former ten-day

limit).  Counsel for plaintiff shall serve a copy of this Report and Recommendation on

defendants by letter and promptly file proof of service with the Court.

> /s/
> STEVEN M. GOLD
> United States Magistrate Judge

Brooklyn, New York
December 27, 2020

*U:\#ECC 2019-2020\20-cv-2030 G&G Closed Circuit v. Vasquez\20-cv-2030 G&G Closed Circuit FINAL.docx*